# Order

Michigan Supreme Court
Lansing, Michigan

September 18, 2009

138349

KERI LYNN LIPNEVICIUS,
      Plaintiff-Appellee,

v

GEOFFREY MICHAEL LIPNEVICIUS,
      Defendant-Appellant,

and

JASON BRISTOL,
      Intervening Plaintiff-Appellee.

_____/

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway,
Justices

SC: 138349
COA: 289073
Genesee CC: 06-270914-DM

On order of the Court, the application for leave to appeal the January 21, 2009 order of the Court of Appeals is considered and, pursuant to MCR 7.302(H)(1), in lieu of granting leave to appeal, we REMAND this case to the Court of Appeals for consideration as on leave granted. The court should consider: (a) whether the trial court legally erred in allowing the biological father to intervene in the divorce proceedings; (b) whether the defendant father was the child's legal father prior to the trial court's determination that the defendant father was not a biological parent; (c) whether the trial court's determination that the defendant father was not the child's biological parent amounted to termination of his parental rights; (d) if the trial court's determination did amount to a termination of the defendant father's parental rights, whether any constitutional implications exist; cf. *Santosky v Kramer*, 455 US 745 (1982); (e) whether the defendant father was entitled to invoke the equitable parent doctrine after the court determined that another man was the biological father; (f) whether the defendant father's entitlement to invoke the equitable parent doctrine is in any way affected by the fact that the biological father is apparently willing to undertake all parental responsibilities with regard to the child; and (g) whether, if the defendant father is entitled to invoke the equitable parent doctrine, he has satisfied the standards of an equitable parent.

KELLY, C.J. (*dissenting*).

I believe that the order remanding this case to the Court of Appeals for consideration as on leave granted correctly flags the relevant legal issues. However, I favor granting leave to appeal rather than remanding. This case presents unique questions of law in that it differs from previous cases that have raised the equitable parent doctrine. Consequently, its correct resolution is unclear. In granting leave to appeal, I would order oral argument on the issues specified in the remand order to assist the Court.[1]

## FACTS AND PROCEDURAL HISTORY

The plaintiff filed for divorce from her husband in 2006. During the proceedings, plaintiff sought a determination of the parentage of their son, NL. A person asserting that he was the biological father was permitted to intervene. A DNA test confirmed that the intervenor was NL's biological father, and the trial court thereafter determined that plaintiff had successfully rebutted the presumption of legitimacy. It issued an order holding that the child had been born out of wedlock, was not the issue of the marriage, and that the intervenor was NL's father.

Defendant then moved that the court declare him NL's equitable—hence, natural and legal—father. The court denied the motion, holding that plaintiff had rebutted the presumption of NL's legitimacy by clear and convincing evidence and that the intervenor was the "natural" father. As there can be only one father, the court ruled that defendant could not be declared an equitable parent. The Court of Appeals denied defendant's application for leave to appeal. NL's biological parents subsequently married and currently live together with NL.

## HISTORY OF THE EQUITABLE PARENT DOCTRINE IN MICHIGAN

The "equitable parent" doctrine originated in the Court of Appeals decision in *Atkinson v Atkinson*.[2] In that divorce case, the child's mother contended that her husband was not the child's father. A blood test subsequently confirmed her contention. Nevertheless, the husband argued that the court should treat him as the child's equitable parent because of the close father-son relationship the two shared. Notably, the court observed that "[p]laintiff is the only father [the child] has ever known . . . ."[3]

---

[1] I also note that the parties raise numerous procedural arguments that further complicate this appeal. Thus, the burden of the Court of Appeals on remand is heightened and further delay is likely.

[2] *Atkinson v Atkinson*, 160 Mich App 601 (1987).

[3] *Id.* at 610.

The Court then adopted the doctrine of "equitable parent." In doing so, it established this test for its application:

> [W]e adopt the doctrine of equitable parent and find that a husband who is not the biological father of a child born or conceived during the marriage may be considered the natural father of that child where (1) the husband and the child mutually acknowledge a relationship as father and child, or the mother of the child has cooperated in the development of such a relationship over a period of time prior to the filing of the complaint for divorce, (2) the husband desires to have the rights afforded to a parent, and (3) the husband is willing to take on the responsibility of paying child support.[4]

The Court of Appeals later addressed the correct application of the doctrine in three interrelated cases: *York v Morofsky*,[5] *York v Coble*,[6] and *Coble v Green*.[7] In *York I*, the plaintiff wife (York) disclaimed the defendant husband's (Morofsky's) parentage of their son during their divorce proceedings. The trial court found that the plaintiff had established that the child was not a product of the marriage and denied Morofsky's attempt to establish himself as the child's equitable parent. The Court of Appeals reversed, holding that "equitable parenthood is a permanent status once it attaches."[8] Therefore, the Court concluded that the trial court had erred because it had "entirely ignored defendant's role in supporting the child for the first four years of his life . . . ."[9] As in *Atkinson*, the biological father (Coble) at no time attempted to assert his parental rights to the child at issue in the proceedings.

Subsequently, Morofsky was jailed for failure to pay child support. York sought to reinstate a paternity action against Coble, the child's biological father. The trial court granted the motion and allowed the paternity action to go forward. The court relied heavily on public policy concerns and the best interests of the child in determining that Coble was the child's biological parent and ordering him to pay child support. The Court of Appeals dismissed Coble's appeal because of a filing defect.

---

[4] *Id.* at 608-609.

[5] *York v Morofsky*, 225 Mich App 333 (1997) (*York I*).

[6] *York v Coble*, unpublished order of the Court of Appeals, entered March 27, 2001 (Docket No. 228309) (*York II*).

[7] *Coble v Green*, 271 Mich App 382 (2006).

[8] *York I*, *supra* at 337.

[9] *Id.* at 336.

Coble then sued his attorney (Green) for legal malpractice for failing to inform him of the Court of Appeals dismissal of his appeal. The trial court denied Green's motion for summary disposition, ruling that neither Coble nor the child's mother had standing to bring a paternity action. Because Morofsky had been deemed the child's equitable parent in *York I*, no determination could be made that the child was not the issue of the marriage. The Court of Appeals affirmed, agreeing that, because the child had a legal father under its decision in *York I*, York lacked standing to pursue a paternity action against anyone else. This Court denied leave to appeal.[10]

This Court affirmed the viability of the equitable parent doctrine in *Van v Zahorik*.[11] The parties in *Van* cohabited for a number of years, during which time the defendant mother had two children. The parties never married. After the relationship ended, the defendant refused to allow the plaintiff to see the children and denied that he was the children's father. The plaintiff filed a petition to establish paternity.

After blood tests showed that the plaintiff was not the natural father of either child, the plaintiff argued that he should be considered the children's equitable parent. He claimed that he had cared for and financially supported the children both during and after his relationship with the defendant. The trial court granted summary disposition to the defendant. It reasoned that the parties had never married and that the doctrine of equitable parenthood was applicable only where the parties were married. The Court of Appeals affirmed that the equitable parent doctrine applies only when the parties are married.[12] This Court agreed.[13]

### SHOULD THE EQUITABLE PARENT DOCTRINE APPLY HERE?

The facts in this case are different from those in *Atkinson*, *Van*, and other cases applying the equitable parent doctrine. Here, the husband wishes to continue as the child's legal father despite the fact that he has been shown not to be the biological father. Yet the biological father also seeks legal right to the child. The proper application of the

---

[10] *Coble v Green*, 477 Mich 1054 (2007). I, as well as Justices Cavanagh and Weaver, voted to grant leave to appeal in *Coble*.

[11] *Van v Zahorik*, 460 Mich 320 (1999).

[12] *Van v Zahorik,* 227 Mich App 90 (1997).

[13] *Van v Zahorik,* 460 Mich 320 (1999). I dissented from the majority's decision in *Van*, as did Justice Brickley, joined by Justice Cavanagh.

equitable parent doctrine to this set of facts is a matter of first impression.[14]

The trial court determined that its order finding the intervenor to be NL's biological father was controlling and precluded application of the equitable parent doctrine in defendant's favor. In effect, the order terminated defendant's parental rights. A majority of this Court has recognized the gravity of the holding by flagging it for the Court of Appeals to consider on remand.

CONCLUSION

Given the jurisprudentially significant issues present here and the lack of relevant authority to guide the Court of Appeals on remand, I would not remand this case. Rather, I would grant defendant's application for leave to appeal.

---

[14] Indeed, this case appears to be a mirror image of *Coble*. There, the Court of Appeals determined that, because the court had previously held that the child had an equitable father, that holding could not be challenged by a biological parent.

The trial court in this case relied on *Coble* as controlling its decision that its order finding the intervenor to be the child's "natural" parent was dispositive of defendant's claim of equitable parenthood. Because this Court simply denied leave to appeal in *Coble*, and because I nevertheless do not view *Coble* as dispositive of defendant's claim, I believe this conclusion supports granting further review.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

September 18, 2009

_Corbin R. Davis_
Clerk

p0915